575 F.2d 461
 Thomas BOLDING, Robert Fink, Samuel Bost, Raymond Creason,
James Grant, Gerald R. Price, Perry W. Franklin, Norman
Anthony, Wilburt Clemmons, Jimmy Covington, Erwin Zelms,
Marjorie H. Marsh, Timothy P. Harding, William R. McCall,
Fred T. Malick, Glenn Ford, Jodie V. Austin, John H. Stacks,
Charles L. Edmondson, Donald Perkins, Jim Vickers, Anne C.
Willett, Gonzales Jones, Anne Sheppard Turner, Michael
McSwiggen, Sherman Jones, Strother Holder, James Sapp, and
Dennis Cole, and all others similarly situated, Appellants,
v.
James E. HOLSHOUSER, Jr., Individually and in his official
capacity as Governor of North Carolina, David L. Jones,
Individually, and in his official capacity as Secretary of
Social Rehabilitation and Control, Ralph D. Edwards,
Individually, and in his official capacity as Commissioner
of the North Carolina Department of Correction, Jack Scism,
Individually, and in his official capacity as Chairman of
the North Carolina Parole Commission, the North Carolina
Parole Commission, the North Carolina Commission of
Correction, J. Richard Smith, Individually and in his
official capacity as Superintendent of the Craggy Subsidiary
of the North Carolina Department of Correction, E. C.
Watkins, Individually, and in his capacity as Superintendent
of the Stanley County Subsidiary of the North Carolina
Department of Correction, L. C. Stephenson, Individually,
and in his official capacity as Superintendent of the
Caledonia Farms Subsidiary of the North Carolina Department
of Correction, and Sam Garrison, Individually, and in his
capacity as Warden of Central Prison, and Fred Briggs,
Individually, and in his capacity as Chairman of the Central
Classification Committee of the Department of Correction, Appellees.
 No. 76-2151.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1977.
Decided April 26, 1978.
 
 Allen H. Wellons, Asheville, N. C. (Russell P. Brannon, Van Winkle, Buck, Wall, Starnes, Hyde & Davis, Asheville, N. C., on brief), for appellants.
 Jacob L. Safron, Special Deputy Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen., Raleigh, N. C., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WINTER, Circuit Judge.
 WINTER, Circuit Judge:
 
 
 1
 The district court granted a motion under Rule 12(b)(6), F.R.Civ.P., to dismiss a complaint brought by a group of North Carolina prisoners, both individually and as representatives of all prisoners similarly situated in North Carolina prisons. The complaint sought a declaratory judgment that certain prison conditions and certain treatment of prisoners and their mail violated the constitutional rights of the prisoners under the Federal Constitution and the Constitution of North Carolina. The major premise for the district court's ruling was that the complaint failed to state a claim upon which relief could be granted because it set forth merely legal conclusions unsupported by adequate factual allegations. The district court also expressed its unwillingness "to take under its control and management the prison system (of North Carolina)" in this or any other case, and to that end stated that it would not grant class relief although it would grant individual relief to any plaintiff who would plead and prove an individual right to relief. We reverse and remand the case for further proceedings.
 
 I.
 
 2
 Plaintiffs are twenty-nine prisoners incarcerated in thirteen penal institutions in various cities and towns in North Carolina. They sue the Governor of North Carolina, the Secretary of the Department of Social Rehabilitation and Control, the Director of Prisons and Commissioner of the Department of Correction, the persons constituting the North Carolina Parole Commission and those constituting the North Carolina Commission of Correction, the Chairman of the Central Classification Committee of the Department of Correction, and the various persons who are the Superintendents or Wardens of the various institutions in which plaintiffs are confined.
 
 
 3
 The plaintiffs' substantive allegations go to the charges of (1) overcrowding, (2) interference with prisoners' mail, (3) isolation, (4) denial of procedural due process at administrative hearings dealing with parole, transfer, disciplinary action and prisoner classification, and (5) general conditions. The task of summarizing them yet preserving their essential fullness is impossible, so we append as an appendix to this opinion the portion of the complaint dealing with each of these substantive complaints. The complaint charged that the acts and omissions of defendants amounted to (a) cruel and unusual punishment in violation of the Eighth Amendment and Article I, § 27 of the North Carolina Constitution, (b) denial of access to the courts and access to counsel in violation of the Sixth Amendment, and (c) denial of due process of law in violation of the Fourteenth Amendment.
 
 
 4
 Plaintiffs sought comprehensive declaratory and injunctive relief. They sought a declaration that each inmate was entitled to eighty square feet of living space, that conditions in the North Carolina prison system do not meet minimum constitutional standards, and that defendants violated plaintiffs' constitutional rights in the divers regards set forth in the substantive allegations. Both interim and permanent injunctive relief, albeit some of it conflicting, were sought, inter alia, to enjoin defendants from accepting new prisoners until minimum constitutional standards were met, to require defendants to parole prisoners to reduce unconstitutional overcrowding, to enjoin the construction of new prison facilities until programs for education, recreation and work-release were funded and developed, to enjoin defendants from interference with prisoners' mail, to enjoin the denial of hygienic needs, medical services, sanitary food service and access to reading and writing materials, and to require defendants to afford prisoners procedural due process with regard to their future status. The relief prayed also included a request for protecting plaintiffs against retaliation for bringing the suit, the appointment of a Citizens Committee to monitor compliance with any order granting relief and a reservation of jurisdiction until full compliance with any order entered by the court.
 
 II.
 
 5
 Without expressing any view as to whether plaintiffs can prove all or any of the facts that they allege and, if so, whether they would be entitled to any or all of the exact relief that they pray, we disagree with the district court that plaintiffs have failed to state a claim upon which relief may be granted.
 
 
 6
 The adoption of the Federal Rules of Civil Procedure in 1938 marked the demise of common law pleading in the federal courts; in its place, the rules adopted the concept of notice pleading. Thus, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) must be given a construction consonant with this basic concept; detailed factual averments are no longer necessary to avoid dismissal of a claim. And in testing the sufficiency of compliance with Rule 8 when a Rule 12(b)(6) motion has been filed, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), teaches that
 
 
 7
 In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
 
 
 8
 This test was repeated more recently in Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); and Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). See also Gordon v. Leeke, 574 F.2d 1147 (4 Cir., Decided March 6, 1978).
 
 
 9
 In application of these principles, we think it manifest that plaintiffs' complaint is immune to dismissal under Rule 12(b)(6) in at least four of the five separate causes of action which are asserted.
 
 
 10
 A. With respect to overcrowding, plaintiffs have alleged that the prison facilities in the State of North Carolina "do not provide adequate personal living space for each individual prisoner," and as a result they allege that plaintiffs "are victims of and are in constant danger of violent and deadly attack; . . . (they) are victims of and face the persistent danger of rape and other sexual attack or molestation; . . . (and they) suffer accumulating psychological damage from the high level of mental stress and fear." In addition, plaintiffs allege that as a result of the overcrowding they do not receive "adequate educational, recreational and work-release programs; . . . sanitary living conditions; . . . supplies for meeting basic personal hygiene; . . . adequate medical, psychological and dental care; . . . visitation rights; . . . (and) a functional classification system . . . (to) provide treatment for those individuals with emotional problems, safety for prisoners in general population, and means for prisoners to achieve personal improvement." These allegations are sufficiently factual to state a cognizable claim. See Pugh v. Locke, 406 F.Supp. 318 (M.D.Ala.1976), aff'd in part, rev'd in part, Newman v. Alabama, 559 F.2d 283 (5 Cir. 1977).
 
 
 11
 B. With respect to interference with prisoners' mail, plaintiffs have alleged that defendants "unreasonably delayed the delivery of incoming mail and the posting of outgoing mail, and have . . . failed or refused to deliver incoming mail or post outgoing mail." Moreover, plaintiffs have alleged that defendants have delayed the delivery and the posting of attorney-client mail and at times have failed or refused to deliver or post such mail. Again, the allegations are sufficient to state a cognizable claim. See Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).
 
 
 12
 C. As to isolation, plaintiffs have alleged that their cells "do not meet minimum standards of the United States Public Health Service" and that plaintiffs are "not provided with three wholesome and nutritious meals a day; . . . are not provided with toilet articles necessary to keep up their own personal hygiene; . . . are not provided with adequate shower opportunities; . . . are not provided with clean and sanitary linen; and . . . are not provided with adequate exercise and recreation time. . . ." These, too, are factual allegations sufficient to state a cognizable claim. See Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854 (4 Cir. 1975).
 
 
 13
 D. In regard to general conditions, the plaintiffs allege that defendants have failed "to provide adequate sanitary food service facilities. . . ." We think this allegation sufficient to state a cognizable claim.
 
 
 14
 E. Finally, with regard to their claims of procedural due process, we agree with the district court that plaintiffs have probably failed to allege a cognizable claim. Their only allegation is that defendants have failed "to provide meaningful hearings which comport with minimal standards of fairness" in regard to such matters as "parole, transfer, disciplinary action, and prisoner classification." While various decisions have recognized that procedural due process must be afforded in regard to such matters and have defined what process is "due" in each of such contexts, we are inclined to think that plaintiffs' allegations are so general and so broad that they state conclusions of law rather than a short and plain factual statement showing that plaintiffs are entitled to relief. If the claim of denial of procedural due process of law was plaintiffs' sole cause of action, we would agree, especially since plaintiffs were represented by counsel, that the complaint should be dismissed. However, any such dismissal should be with leave to amend within a reasonable period to correct the omissions and deficiencies of the pleader by supplying specific allegations concerning those practices which are claimed to violate the due process clause. Gordon v. Leeke, supra. Since this alleged cause of action is not plaintiffs' only cause of action, it is manifest that the entire complaint should not be dismissed, and since portions of the complaint, as we hold, are clearly immune from dismissal, we think that dismissal solely as to this cause of action is warranted but only with leave to amend.
 
 
 15
 Plaintiffs' complaint is broad in nature and sweeping in scope. We are constrained to add, therefore, that although we think that it is immune to dismissal under Rule 12(b)(6), it does not follow that the district court should proceed directly to determining if a class should be certified and to trial without delineation and definition of the issues. Delineation and definition of the issues will undoubtedly have a direct bearing on whether a class should be certified and, if so, the description of the class. It may also disclose a basis on which the district court should sever the claims and order them tried separately. Rules 42(b) and 20(b). Perhaps even the trials of some severed claims should be transferred to the Middle or the Eastern District of North Carolina. Leesona Corporation v. Cotwool Manufacturing Corporation, 308 F.2d 895 (4 Cir. 1962).
 
 
 16
 Under the Rules of Federal Procedure, the manner in which the issues are delineated and defined, as well as the factual basis for claims disclosed and sham claims eliminated, is not by the pleadings. Hodgson v. Virginia Baptist Hospital, Inc., 482 F.2d 821 (4 Cir. 1973). "The rules provide techniques more efficient than pleadings for performing (these) functions. The facts may be determined by discovery. The issues may likewise be narrowed by discovery or at a pretrial conference, or by 'partial summary judgment' under Rule 56(d). Cases where there is no real controversy may be disposed of speedily and finally, on the merits, by summary judgment." C. Wright, Law of Federal Courts 319 (3d ed. 1976). Thus, we remind counsel for defendants and the district court that the proper path for them to pursue is not a motion under Rule 12(b)(6) but the various procedures authorized and described in Rules 16, 26-37, and 56.
 
 III.
 
 17
 Because the district court went beyond dismissal of the complaint and indicated that it would never entertain a class suit granting class relief in a cause of this nature, we think it appropriate to remind the district court of the scope of a proper exercise of its jurisdiction in an appropriate case. We, of course, express no view on whether the proof which the plaintiffs may adduce represents such a case.
 
 
 18
 Recently the Supreme Court has cautioned against sweeping injunctions directed at state executive officials. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). While Rizzo states that the principles of federalism militate against injunctive relief under 42 U.S.C. § 1983 against the executive branch of state or local governments, Rizzo does not preclude recourse to broad injunctions when a clear pattern of unconstitutional conduct has been established. Specifically, Rizzo does not overrule Procunier v. Martinez, supra, where the Court, after stating that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" (416 U.S. at 405, 94 S.Ct. at 1807), nevertheless added:
 
 
 19
 But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights. Johnson v. Avery, 393 U.S. 483, 486, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). 416 U.S. at 405-06, 94 S.Ct. at 1807-1808.
 
 
 20
 We agree with the holding in Newman v. Alabama, 559 F.2d 283 (5 Cir. 1977), that, notwithstanding Rizzo, class relief requiring sweeping changes in a state prison system may still be mandated when the proof requires such relief.
 
 IV.
 
 21
 In the district court, defendants asserted, as an alternative reason why their motion to dismiss should be granted, that only eight of the plaintiffs were confined in the four penal institutions located in the Western District of North Carolina in which suit was filed, that the remaining twenty-one plaintiffs were confined in penal institutions located in other districts of North Carolina, that all but one of the defendants reside and have their principal offices in districts of North Carolina other than the Western District and that, therefore, the district court lacked venue except as to the eight plaintiffs confined within its territorial jurisdiction. In this regard, defendants' motion to dismiss was a motion under Rule 12(b)(3).
 
 
 22
 The district court did not find it necessary to rule on this aspect of the motion but defendants press this theory on us as a basis for sustaining the result, at least in part, reached by the district court.
 
 
 23
 We reject the contention. It is true that 28 U.S.C. § 1391(b) states that non-diversity cases "may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law," but 28 U.S.C. § 1392(a) makes special provision applicable to this case. It states that a civil action "not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts." Since the instant case is a purported class suit against defendants residing in the several districts of North Carolina, venue lay, inter alia, in the Western District of North Carolina. This is not to say, however, that upon a proper showing the district court may not conclude to transfer the case to another district. The provisions of 28 U.S.C. § 1404(a) state specifically that "(f)or the convenience of parties and witnesses" a district court possesses the authority to transfer a civil action "to any other district . . . where it might have been brought."
 
 
 24
 We reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.
 
 
 25
 REVERSED AND REMANDED.
 
 ADDENDUM
 
 26
 After the foregoing opinion and Judge Bryan's dissent were circulated to the non-sitting judges, Judge Hall suggested that the case be reheard in banc and he requested a poll on his suggestion. The poll lost for lack of a majority of the votes of the judges entitled to vote therein.
 
 
 27
 For the reasons stated in Judge BRYAN's dissenting opinion, Judge RUSSELL, Judge WIDENER and Judge HALL dissent from the failure to rehear the case in banc.
 
 APPENDIX
 
 28
 The substantive allegations of the complaint are contained in paragraph VII which follows:
 
 STATEMENT OF CLASS CLAIM
 Count One Overcrowding
 
 29
 A. Defendants, by confining Plaintiffs within facilities under Defendants' control, have and continue to subject Plaintiffs to impermissible indignity because the majority, if not all, of the prison facilities in the State of North Carolina, as designed and constructed, violate the evolved standards of decency upheld, embodied, and protected by this society, in that they do not provide adequate personal living space for each individual prisoner.
 
 
 30
 B. By permitting and causing the prisoner population at each prison facility to exceed the designed capacity, the Defendants have subjected Plaintiffs to further degrading and inhumane deprivations.
 
 
 31
 C. The extreme overcrowding and its resultant effects has created an environment in which the evermounting tensions, fears, and frustrations prevent, disrupt and destroy normal human interaction. The Defendants are unwilling or unable to protect Plaintiffs from the unnatural behavior which results, to wit:
 
 
 32
 1. Plaintiffs are victims of and are in constant danger of violent and deadly attack;
 
 
 33
 2. Plaintiffs are victims of and face the persistent danger of rape and other sexual attack or molestation;
 
 
 34
 3. Plaintiffs suffer accumulating psychological damage from the high level of mental stress and fear.
 
 
 35
 D. Beyond the suffering caused by overcrowding itself, overcrowding results in the Plaintiffs being subjected to additional cruelties including, but not limited to, the following:
 
 
 36
 1. Defendants are unwilling or unable to provide adequate educational, recreational, and work-release programs;
 
 
 37
 2. Defendants cannot, or have refused to, provide sanitary living conditions;
 
 
 38
 3. Defendants are unwilling or unable to provide adequate supplies for meeting basic personal hygiene needs of Plaintiffs;
 
 
 39
 4. Defendants do not provide adequate medical, psychological, and dental care for the Plaintiffs;
 
 
 40
 5. Defendants have increasingly curtailed visitation rights of Plaintiffs, due to lack of space which can be used as a visiting area;
 
 
 41
 6. Defendants are unable to operate a functional classification system which would provide treatment for those individuals with emotional problems, safety for prisoners in general population, and means for prisoners to achieve personal improvement.
 
 Count Two Mail
 
 42
 A. The Defendants, both intentionally and negligently, have interferred with the mail of Plaintiffs and others similarly situated in that they have unreasonably delayed the delivery of incoming mail and the posting of outgoing mail, and have at times failed or refused to deliver incoming mail or post outgoing mail.
 
 
 43
 B. The Defendants, both intentionally and negligently, have interferred with Plaintiffs' mail transmitted to and from their attorneys. Specifically, Defendants have unreasonably delayed the delivery of incoming, and the posting of outgoing, attorney-client mail, at times having failed or refused to deliver or post such mail. In addition, Defendants have engaged in the censorship of attorney-client mail and have inspected attorney-client mail without the prisoner-client being present.
 
 
 44
 C. Defendants' actions with regard to the mail of Plaintiffs and others similarly situated exceed the measures necessary to insure internal security in the prisons and deprive Plaintiffs of their rights of free speech, freedom of association, and access to counsel and the Courts.
 
 Count Three Isolation
 
 45
 The defendants in the past have placed, and continue to place, Plaintiffs in isolation (the hole) without providing them with safe and sanitary conditions, to-wit:
 
 
 46
 1. Plaintiffs' cells do not meet minimum standards of the United States Public Health Service;
 
 
 47
 2. Plaintiffs are not provided with three wholesome and nutritious meals a day;
 
 
 48
 3. Plaintiffs are not provided with toilet articles necessary to keep up their own personal hygiene;
 
 
 49
 4. Plaintiffs are not provided with adequate shower opportunities necessary to keep up their own personal hygiene;
 
 
 50
 5. Plaintiffs are not provided with clean and sanitary linen; and
 
 
 51
 6. Plaintiffs are not provided with adequate exercise and recreation time outside the cell.
 
 Count Four Administrative Hearings
 
 52
 The Defendants have failed to provide meaningful hearings which comport with minimum standards of fairness on matters determinative of Plaintiffs' future status, such as parole, transfer, disciplinary action, and prisoner classification.
 
 Count Five General Conditions
 
 53
 The Defendants have been guilty of other violations of the constitutional rights of the Plaintiffs not herein specifically alleged, including, but not limited to, the failure to provide adequate sanitary food service facilities and conditions, which violations, when taken together and in combination with the conditions and violations alleged in the previous counts, serve to further deprive the Plaintiffs of rights conferred upon them by the Constitutions of the United States and the State of North Carolina.
 
 BRYAN, Senior Circuit Judge, dissenting:
 
 54
 Deferentially I disagree with today's basic holding. It is that the motion to dismiss the complaint under FRCiv.P 12(b)(6) failure to state a claim upon which relief can be granted must be denied in this suit brought by 29 inmates of 13 State prisons, to have the Federal District Court assume supervision of all 77 of the prisons comprising the North Carolina system.
 
 
 55
 The very entertainment of the instant complaint, in my view, offends a fundamental of federalism: it is a bald, bold and entire usurpation of an official State function. Rizzo v. Goode, 423 U.S. 362, 380, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Argument to sustain the suit as one simply ill-pleaded ignores the integral and facial insufficiency in law of the complaint. Immediately its illegal concept is manifest in the compass of its allegations and prayers for their effectuation.
 
 
 56
 In this take-over, plaintiffs begin with the Governor, suing him and following through with the naming as defendants of apparently every officer whose duties might touch upon the State's policies and efforts in the punishment and correction of crime. Grievances asserted are termed as deprivations of the plaintiffs and of the "inmate population", as a whole, of rights under the Eighth Amendment of the Federal, and corresponding articles of the State constitution denouncing cruel and unusual punishments.
 
 I.
 
 57
 The unacceptability of the suit appears at once from the declarations and injunctions prayed with regard to "overcrowding". A formal declaration is demanded "that the minimum living space required for each inmate" by the constitutions is 80 square feet.[1] Thereafter to be decreed are the following injunctions to the State officers:
 
 
 58
 1. Enjoinment of them "from accepting new prisoners until the inmate population is reduced to the point" of minimum constitutional standards "for each facility in the North Carolina prison system".
 
 
 59
 2. Command of the appropriate State departments "to release or parole sufficient numbers of prisoners eligible for parole or release" so as to reduce the inmate population at each correctional facility to "minimum constitutional standards".
 
 
 60
 3. Prohibiting defendants from construction anywhere of more prison facilities until Constitutionally acceptable programs for education, recreation and work-release are funded and developed.[2]
 
 
 61
 4. Ordering the appointment of "a Citizens Committee" for the North Carolina prison system, to be compensated by the State and invested with "general responsibility and authority to monitor and supervise the implementation of the Standards Order achieved by the (District) Court".
 
 
 62
 A more sweeping obtrusion upon the sovereignty of a State is not readily even to be conjectured. All imprisonments are to be stayed, no matter the gravity of the crimes of conviction. Starkly evincing their interference, the plaintiffs ask the Federal court to order the State to grant paroles or releases to inmates so as to provide more space for the convicts remaining there. The parolees or releasees are to be returned to the street on order of the District Court, non obstante the concern and responsibility for the discharge of criminals though eligible for parole or pardon. Note, again, that no new prison facilities are to be constructed by the State until the programing, funding and development of education, recreation and work-release provisions are perfected for the incarcerated.
 
 
 63
 This arrogation of powers attributed by the plaintiffs to the Federal court is even more incomprehensible when judicial notice is taken, as it may be, that in North Carolina there are at least 77 penal establishments located in 67 counties, all of these considerations being embraced in this suit. Haughey v. Rhay, 300 F.Supp. 490, 494 (E.D.Wash.1969); Smith v. Bounds, 538 F.2d 541, 542 (4 Cir. 1975). This court in Hite v. Leeke, supra, 564 F.2d 670, (4 Cir. 1977, opinion by Circuit Judge Russell), exhaustively expounded with precedent, both decisional and commentary, the inhibitions upon the Federal court's invasion of a State's operation of her correctional system. I follow that exegesis. Finally, statewide oversight of this function is, under the prayer of the complaint, to be made the responsibility of a Citizens Committee. Further disclosure of the aim of a total taking over by the Federal court at the instance of the plaintiffs is scarcely necessary.
 
 
 64
 Unlike the majority, I think that Rule 12(b)(6), FRCiv.P, warrants the dismissal of these portions of the complaint for "failure to state a claim upon which relief can be granted".
 
 II.
 
 65
 Likewise deficient in stating a claim cognizable by the District Court are the complaint's remaining allegations and prayers for declarations and injunctions condemning: (a) the living space assigned for each inmate; (b) interference with prisoner's mail; and (c) in isolation, the cells not meeting minimum standards of United States Public Health Service, three wholesome and nutritious meals each day not provided, toilet articles for personal hygiene not furnished, adequate shower opportunities not given, clean and sanitary linen not available, and adequate exercise and recreation time not afforded.
 
 
 66
 When the source of this listing as to any one unit is from a prisoner not an occupant thereof, the failure to make a cognizable case against it or the whole system becomes immediately apparent. All the instant accusations emanate from 29 prisoners and all are against each of the 77 units in the penal system. However, it is not shown that together they can be informed of more than 13 units, since their confinement is in them exclusively. Further, not one is shown to know of the conditions in more than one of these 13. Additionally, as will momentarily be seen, no more than five can speak of a single unit.
 
 
 67
 Complainants are incarcerated as follows: one is in one unit; one is in another unit; one in another; one in another; one in another; one in another; two are in still another; three in still another; three in still another; three in still another; four in still another; four in still another; and five in yet another. All of these units are separated by miles and each is in a different county. The obvious question is how, therefore, can they be heard to speak for conditions throughout the State or even in another unit? For example, how can one or several occupants of a unit appraise the wholesomeness or nutrition of food served in the other 76 units. Similar inquiries occur as to handling of the mail, sanitation of living conditions, supplies for personal hygiene needs and visitation area. Like queries cover operation of the isolation cells in respect to hygienic items such as toilet articles, "shower opportunities", "clean and sanitary linen", "exercise and recreation time outside the cell".
 
 
 68
 These are the facts, not my inferences, presented to the District Court. They constitute a blunderbuss complaint. The case fails on its facts; it fails on its face. So again, it was dismissible on motion under FRCiv.P 12(b)(6). While the factual inadequacy alone ends the action, this result finds support as a matter of law in this circuit in Inmates v. Owens, 4 Cir., 561 F.2d 560, 562-3 (September 16, 1977) holding:
 
 
 69
 "In order to state a civil rights claim upon which relief can be granted under 42 U.S.C. § 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States. Lopez v. Luginbill, 483 F.2d 486, 488 (10th Cir. 1973). This was not done, and the complaint was properly dismissed".
 
 III.
 
 70
 The doctrine of relaxation of pleading pro se by prison inmates has no play here, for the infirmity is not of form but in substance. The complaint was drawn and counseled by reputable attorneys. Notwithstanding the legal insufficiency of the complaint, its allegations and prayers are unmistakably and intentionally aimed at the prison system of North Carolina throughout. It is not a prison-by-prison assault. So to treat it so is to ignore and defeat the thesis of the pleader. Illustrating his entire concept are the prayers against accepting new prisoners anywhere in the State, the construction of more facilities anywhere and the mandate of parole or other release of prisoners everywhere all focused on the system to reduce the existing population. In similar vein is the call for a committee of oversight for it all.
 
 
 71
 Nor does the resolution of this case depend upon whether the District Court can keep this litigation within practicable bounds. We must be mindful that the State is entitled to some consideration. Should a State be subjected to a deliberate broadside attack upon one of its major functions and then its defense be limited to a motion for more definite statements, submission of interrogatories, request for admissions, severances of the claims or other defensive procedures in the Rules? Entertainment of this action will invite generally complaints against a single prison to be framed as an action against the entire State system.
 
 
 72
 To my mind the District Court has judged altogether soundly. Its dismissal was not a prejudicial judgment. Plaintiffs were left free to bring separate appropriate actions for themselves and others suffering deprivations in the same prison.[3] I would affirm with such leave to plaintiffs.
 
 FIELD, Senior Circuit Judge:
 
 73
 While I have no vote upon the en banc suggestion, I want to place myself on record as being in complete accord with the views expressed by Judge BRYAN in his dissenting opinion in this case.
 
 
 
 [1]
 Incidentally, this court held in October 1977, Hite v. Leeke, 4 Cir., 564 F.2d 670, 673, that required occupancy by two prisoners of a cell 65 feet square is not a Constitutional deficiency
 
 
 [2]
 Noteworthy, Newman v. State of Alabama, 559 F.2d 283, 291-2 (5 Cir. 1977) concluded that such provisions were not entitlements under the law
 
 
 [3]
 Indeed, the State of North Carolina notes in its brief that many of these plaintiffs have filed individual actions