Wayne BROOKS and Clarence
Wheeler, Plaintiffs,

v.

Jack WARD, Superintendent of the Union
County Prison Subsidiary # 4550 of the
North Carolina Department of Correc-
tion, James Woodard, North Carolina
Secretary of Correction, Rae McNa-
mara, Director of the Division of the
Prisons of the North Carolina Depart-
ment of Correction, Harold Lilly, Geo-
graphic Commander for the Western
Geographical Command of the Division
of Prisons, and W.V. Ritchie, Adminis-
trator of the Southern Piedmont Area of
the Division of Prisons, Defendants.

No. C–C–80–414–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 8, 1983.

Louis L. Lesesne, Jr., Gillespie & Lesesne, Charlotte, N.C., Norman B. Smith and Melinda Lawrence, Smith, Patterson, Follin, Curtis, James & Harkavy, Raleigh, N.C., Jack Greenberg, Joel Berger and Steven Winter, New York City, for plaintiffs.

Lucien Capone, N.C. Dept. of Justice, Raleigh, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

On December 18, 1980, four prisoners, Wayne Brooks, Clarence Wheeler, Lee Roy Steele, and Kenneth Helms, filed this suit, *pro se*, against Jack Ward, Superintendent of the Union County Prison Unit, Subsidiary # 4550, of the North Carolina Department of Correction. They sought damages, injunctive relief and declaratory relief, on behalf of themselves and all white prisoners similarly situated, for conditions of confinement alleged to violate their constitutional and statutory rights.

On April 22, 1982, the court appointed counsel. On June 15, 1982, plaintiffs filed an amended complaint on behalf of all prisoners who are or will be confined in the Union County Prison Unit. The amended complaint named six additional defendants, dropped the claim for relief in damages, and added a claim of retaliatory transfer.

On September 27, 1982, defendants filed a "Suggestion of Mootness."

The retaliatory transfer claim was tried before a jury on October 18, 1982, and was decided in favor of defendants.

On November 2, 1982, plaintiff Steele took a voluntary dismissal of his suit because he had been released after serving his sentence. On December 27, 1982, plaintiff Helms took a voluntary dismissal for the same reason. Both plaintiff Brooks and plaintiff Wheeler have been transferred by defendants from the Union County unit to other units in the North Carolina Department of Correction.

On December 6, 1982, seven persons moved for permission to intervene as plaintiffs: Bobby Hubert, Elmore Burris, Gifford Wallace, Howard Denny, Steven Huntley, Bernard Avery, and Willie Brown.

On December 6, 1982, plaintiffs moved for certification of a class of "all prisoners who are or will be confined in those facilities administered by the North Carolina Department of Correction and located in the administrative region designated South Piedmont Area. Prison units located in this area are: Cabarrus, Gaston, Iredell, Lincoln, Mecklenburg I, Mecklenburg II, Piedmont, Rowan, Stanly, Union, Catawba, and Cleveland."

A hearing was conducted on March 17, 1983, on the issues of mootness, intervention, and class certification. After consideration of numerous briefs filed by both sides, and arguments of counsel, the court decides as follows:

### INTERVENTION OF GIFFORD WALLACE AND DEFENDANTS' SUGGESTION OF MOOTNESS.

One of the seven proposed intervenors, Gifford Wallace, is currently housed in the Union County prison unit. F.R.Civ.P. 24(b) provides:

> Upon timely application, anyone may be permitted to intervene in an action; ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Applicant Wallace raises the same claims of unconstitutional conditions of confinement that are alleged by the original plaintiffs, including but not limited to: overcrowding, inadequate screening, diagnosis and classification procedures, inadequate medical procedures and inadequate educational and vocational opportunities. The contention that the totality of conditions violates the prisoners' constitutional and statutory rights involves precisely the same questions of law and fact that are involved in the claims of the plaintiffs.

■ Defendants argue that an intervenor should not be allowed to breathe life into a moot suit. Plaintiffs' claims for injunctive and declaratory relief are moot because the plaintiffs are no longer subject to the conditions in the Union County prison unit. *Inmates v. Owens,* 561 F.2d 560 (4th Cir.1977).

■ While intervention can not be used to revive a suit, intervention may be treated as a separate action where there is an independent basis for jurisdiction and where failure to adjudicate would only result in unnecessary delay. *Atkins v. State Board of Education of North Carolina,* 418 F.2d 874, 876 (4th Cir.1969); *Miller & Miller Auction, Inc. v. G.W. Murphy Industries, Inc.,* 472 F.2d 893, 895–6 (10th Cir.1973); *Fuller v. Volk,* 351 F.2d 323, 328–9 (3d Cir.1965); *Hackner v. Guaranty Trust Co.,* 117 F.2d 95, 98 (2d Cir.), *cert. denied,* 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941).

■ Gifford Wallace is housed in the Union County prison unit and has independent standing to bring this claim against defendants. Refusal to allow his intervention

would require the unnecessary expense and delay of filing a new suit and repeating the discovery completed to date.

No prejudice to the parties will result from allowing Wallace to intervene. Defendants have been on notice from the filing of the initial complaint in December, 1980, of the potential classwide liability for conditions of confinement. *Hill v. Western Electric Co., Inc.,* 672 F.2d 381, 386 (4th Cir.1982); *United Airlines v. McDonald,* 432 U.S. 385, 395, 97 S.Ct. 2464, 2470, 53 L.Ed.2d 423 (1977). Rather than delaying resolution of the controversy, Wallace's intervention will speed the adjudication of the legality of the ongoing conditions at the prison unit. No one suggests that plaintiffs or the putative class members will be prejudiced by a speedier resolution, and by the aid of competent counsel in the presentation of their claims.

Defendants argue that the motion to intervene is not timely. The critical issue with respect to timeliness is whether the motion was made as soon as it was clear that the interests of the unnamed class members would not be served by the named representative. *Hill v. Western Electric Co., Inc.,* 672 F.2d at 386. The only reason suggested that Brooks and Wheeler would not adequately represent the class is that their claims are moot, *and that mootness was created by the act of the defendants* —the transfer of plaintiffs away from the Union County unit.

The mootness issue was first raised by defendants on June 28, 1982, in their answer to the amended complaint. The issue was never pressed until defendants filed a "Suggestion of Mootness" on September 27, 1982. The motion to intervene was filed December 6, 1982. The motion was filed within a reasonable time, well before a hearing was held on any of the jurisdictional claims or class certification issues. Certainly defendants have not been prejudiced by the time of filing because they have had an opportunity to brief thoroughly the issue of intervention and because they have been on notice about the claims involved for two years.

Accordingly, Gifford Wallace's motion to intervene is allowed.

## MOTION FOR CLASS CERTIFICATION.

On December 6, 1982, plaintiffs moved to certify a class of "all prisoners who are or will be confined in those facilities administered by the North Carolina Department of Correction and located in the administrative region designated South Piedmont area. Prison units located in this area are: Cabarrus, Gaston, Iredell, Lincoln, Mecklenburg I, Mecklenburg II, Piedmont, Rowan, Stanly, Union, Catawba, and Cleveland."

Defendants object to any consideration of this motion because the claims of the original plaintiffs are moot. The two concerns underlying the mootness doctrine are that (1) the issues are "alive" and (2) that the parties have a "personal stake" in the outcome of the litigation sufficient to guarantee adversariness. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). The issue of ongoing prison conditions is "alive" between the putative class members and the defendants, as indicated by the presence of intervenors who are ready to come forward as named representatives. *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980).

Intervenor Wallace has a "personal stake" in the outcome of the litigation, satisfying the traditional requirement of an involved litigant. The purpose of the case or controversy requirement of Article III is to insure that issues are sharply presented in a concrete factual setting by self-interested parties who vigorously advocate opposing positions. *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 753–56, 96 S.Ct. 1251, 1258–1260, 47 L.Ed.2d 444 (1976). The class action procedure, based on the idea of a "private attorney general," requires a named representative who can fairly and adequately protect the interests of the class. The presence of intervenor Wallace, competent counsel, and proposed intervenors indicate that this case will be litigated vigorously by individuals directly affect-

ed by the conditions in the prisons. The mootness argument has no force.

■ Intervenor Wallace must meet the prerequisites of numerosity, commonality, typicality, and adequate representation, pursuant to F.R.Civ.P. 23(a), to represent the class of all male prisoners confined in the South Piedmont area. The proposed class is comprised of more than 1,000 male prisoners. Joinder of all the class members is impractical.

■ The commonality and typicality requirements merge to mandate a named representative who is part of the class, possesses the same interests, and suffers the same injuries as the class. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The injuries for which Wallace and the class seek injunctive and declaratory relief stem from two sources: (1) the physical structure of the prisons in the South Piedmont area and (2) the administrative policies and procedures which are applied to the area.

Eleven of the twelve facilities involved were constructed in 1939 along a generally common design and were intended to accommodate approximately the same number of inmates. The basic structure is an open dormitory, divided into two sections or blocks, with a shower room and day room on each end of the building. (Deposition of William Ritchie, Area Administrator of the South Piedmont Area, pp. 9–15.) Some of the units have had single cell facilities or modular dormitory units added to the original structure. The basic physical layout, however, is alleged to contribute to the overcrowding, safety, and health problems that are part of the alleged unconstitutional conditions of confinement.

All twelve units are under the administrative control of James Woodard, Secretary of Correction, and all the units must follow the rules and regulations of the state Department of Correction. William Ritchie, the Area Administrator of the South Piedmont Area, oversees the implementation of programs and policies in this area and supervises the staff of the twelve units.

The policies and procedures of which intervenor Wallace complains apply to all prisoners in the South Piedmont area. The screening, classification, and diagnosis policies were established by the Secretary of Correction and apply to all class members. The policies and practices regarding visitation apply to all inmates in facilities administered by the Department of Correction. Guidelines for operation, funding, and procedures for admission to education and vocational programs within the prisons are established on a departmental or regional basis and apply to all class members. Likewise, the policies related to medical staffing, health care facilities, and prisoner access to medical care are developed and implemented on a departmental level.

Defendants point out that some of the units involved are medium custody units while others are minimum custody units. While differences in the custody classifications do exist, defendants make no effort to explain what effect, if any, those differences have on the complaints about the conditions of confinement. From the information in the record, the administrative policies and procedures apply to both types of facilities, and the original physical structures of the units are similar.

■ Defendants further argue that the claims of the individual class members will have to be considered separately because the particular injuries suffered are different. No claim for individual damages is presented in the complaint; intervenor Wallace and the class seek injunctive and declaratory relief for conditions of confinement which affect all prisoners generally. The specific injuries are all alleged to result from the administrative policies and practices that apply to the entire area and from physical structures that are similar. The individual prisoners do not need to be identically situated; it is enough that they all suffer from the same conditions. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir.1975).

Intervenor Wallace will fairly and adequately protect the interests of the class because his interests are the same as the

interests of the class and he is represented by competent counsel. The goal of the complaint in intervention is to improve conditions of confinement in the South Piedmont area prisons; no conflict in interest appears to exist. Plaintiff's attorneys are capable and experienced, and qualified to conduct litigation on behalf of the class.

The class action can be maintained, pursuant to F.R.Civ.P. 23(b)(1) because individual prosecution of the claims of unconstitutional conditions runs risks of varying results which would establish incompatible standards of conduct for defendants. Further, individual adjudications may be practically dispositive of the interests of other persons, and may impair or impede their ability to protect their interests. The class action can also be maintained under F.R.Civ.P. 23(b)(2) because the defendants have acted or refused to act on grounds that are generally applicable to the class, making injunctive or declaratory relief appropriate. Traditionally, prison condition suits are brought as class actions for these reasons. *Battle v. Anderson,* 376 F.Supp. 402 (E.D.Okl.1974), aff'd. 564 F.2d 388 (10th Cir.1977); *James v. Wallace,* 406 F.Supp. 318 (M.D.Ala.1976), aff'd. in substance sub nom, Newman v. State of Alabama, 559 F.2d 283 (5th Cir.1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Newman v. Alabama,* 349 F.Supp. 278 (M.D.Ala.1972), aff'd., 503 F.2d 1320 (5th Cir.1974), cert. denied 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975).

A class action is particularly appropriate in the South Piedmont area because the common questions of law and fact relating to the administrative policies and physical structures predominate over any questions affecting only individual members of the class. Individual members of the class will be benefited by representation by able counsel. All parties will be benefited by a more speedy and definitive resolution of the issues relating to prison conditions. On these facts, the class device is the most efficient and fair method for adjudicating this controversy involving questions common to the South Piedmont area prisons.

Accordingly, the class of "all prisoners who are or will be confined in those facilities administered by the North Carolina Department of Corrections and located in the administrative region designated the South Piedmont area" is hereby certified.

## INTERVENTION OF THE SIX REMAINING APPLICANTS.

Six prisoners in addition to Gifford Wallace moved on December 6, 1982, for leave to intervene in this suit: Bobby Hubert (Iredell); Elmore Burris (Lincoln); Howard Denny (Piedmont); Steven Huntley (Piedmont); Bernard Avery (Stanly); and Willie Brown (Cleveland).

All the applicants' claims and the main action involve the same questions of law and fact—the legality of the conditions in the South Piedmont area prisons. Each applicant challenges the policies and procedures relating to overcrowding, screening and classification, medical care, visitation, safety, and educational and vocational opportunities which apply to the entire area. The common questions of law and fact are discussed more completely in the preceding consideration of the class certification motion.

Defendants complain they are prejudiced by the expansion of the number of prison units considered in this suit because of personnel changes and delay required to complete additional discovery. No undue delay will be caused by the intervention of these parties. Much of the discovery is complete, particularly regarding the policies and procedures which apply to the entire area. Indeed, the motion to intervene and the definition of the class appear to be efforts on the part of the plaintiffs to conform to the discovery received so far. If anything, delay will be reduced as each of these applicants has individual standing and could simply file a new complaint if not allowed to intervene.

Further, defendants are not prejudiced because they have been on notice since December 1980 of the alleged illegality of the policies and practices that are applied to the

entire South Piedmont area. Defendants do not explain how "personnel changes" result in prejudice. The injunctive and declaratory relief sought by the applicants goes to the general structures, policies and procedures of the system. Individual defendants are affected in their official, as opposed to individual capacities.

The six applicants' motion to intervene is timely because it was filed within a short time after it became clear that the applicants' interests would not be adequately protected by the named plaintiffs. Like intervenor Wallace, these applicants had no reason to doubt the plaintiff's capacities until the mootness issue was pressed by defendants on September 27, 1982.

Finally, defendants complain that intervention should not be allowed because venue is improper. Venue is proper pursuant to 28 U.S.C. § 1392(a). *Bolding v. Holshouser,* 575 F.2d 461, 466 (4 Cir.1978).

Accordingly, the motions for leave to intervene filed by Bobby Hubert, Elmore Burris, Howard Denny, Steven Huntley, Bernard Avery, and Willie Brown are granted, pursuant to F.R.Civ.P. 24(b)(2).

IT IS HEREBY ORDERED THAT:

1. The motions of Bobby Hubert, Elmore Burris, Gifford Wallace, Howard Denny, Steven Huntley, Bernard Avery, and Willie Brown for permission to intervene as additional plaintiffs in this case are granted. The new plaintiffs may file their proposed complaint in intervention.

2. Plaintiffs' motion to certify a class of "all prisoners who are or will be confined in those facilities administered by the North Carolina Department of Correction and located in the administrative region designated South Piedmont Area" is hereby granted. Prison units included are Cabarrus, Gaston, Iredell, Lincoln, Mecklenburg I, Mecklenburg II, Piedmont, Rowan, Stanly, Union, Catawba, and Cleveland.

3. The claims of plaintiffs Wayne Brooks and Clarence Wheeler are hereby dismissed as moot because they are no longer confined in South Piedmont area prisons.

4. Defendants' motion to dismiss the entire suit on the ground of mootness is denied.

5. Future orders and pleadings shall bear the caption: BOBBY HUBERT; ELMORE BURRIS; GIFFORD WALLACE; HOWARD DENNY; STEVEN HUNTLEY; BERNARD AVERY and WILLIE BROWN, Plaintiffs, vs. JACK WARD, Superintendent of the Union County Prison Subsidiary # 4550 of the North Carolina Department of Correction; JAMES WOODARD, North Carolina Secretary of Correction; RAE McNAMARA, Director of the Division of the Prisons of the North Carolina Department of Correction; HAROLD LILLY, Geographic Commander for the Western Geographical Command of the Division of Prisons; and W.V. RITCHIE, Administrator of the Southern Piedmont Area of the Division of Prisons, Defendants.