973 F.2d 354
 Diane Sue KING, Plaintiff-Appellant,
v.
Cassandra F. MYERS, Individually and as a magistrate,
Defendant-Appellee,
and
James C. Hartman, Individually and as a police officer;
C.A. Sager, Individually and as a police officer;
Town of Warrenton, Virginia; County of
Fauquier, Virginia, Defendants.
 No. 92-1283.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 9, 1992.
Decided Aug. 21, 1992.
 
 Elaine Hicks Cassel, Warrenton, Va., argued for plaintiff-appellant.
 Linwood Theodore Wells, Jr., Asst. Atty. Gen., Office of the Atty. Gen., Richmond, Va., argued (Mary Sue Terry, Atty. Gen. of Virginia, on brief), Office of the Attorney General, Richmond, Va., for defendant-appellee.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 MURNAGHAN, Circuit Judge:
 
 
 1
 The appeal arises from the dismissal by the United States District Court for the Eastern District of Virginia of the complaint filed by Diane Sue King against, inter alia, Magistrate Cassandra F. Myers, individually and in her capacity as magistrate for the General District of Fauquier County, and the town of Warrenton, Virginia, seeking monetary damages under 42 U.S.C. § 1983 for an alleged violation of King's civil rights. Magistrate Myers filed a motion to dismiss King's complaint for failure to state a claim on which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Magistrate Myers was acting in her capacity as a judicial officer and is thus immune from liability for a suit for monetary damages.
 
 
 2
 A hearing was held before the district court on December 6, 1991, and the complaint was thereafter dismissed as to Magistrate Myers. The claims against other defendants were voluntarily dismissed. Final judgment as to Magistrate Myers was issued by the district court on February 20, 1991, and King thereupon initiated the instant appeal. Finding no error, we affirm.
 
 I.
 
 3
 The following factual background is drawn from the allegations made by King in her complaint, since the facts are viewed in the light most favorable to King in determining whether she has stated a claim upon which relief can be granted.
 
 
 4
 At the time of the incidents pertaining to the complaint, King was involved in a divorce proceeding with her husband, Calvin King, in Fauquier County, Virginia. In the middle of May, 1991, King was awarded custody of her minor daughter, but both King and her husband agreed to allow both the minor daughter and the nineteen-year-old daughter to live with their father. On May 25, 1991, her husband came to King's home and took their daughters with him, after an argument between King and her daughters over which property they could take with them in moving in their father's residence. The next morning, King had the locks on her residence changed.
 
 
 5
 Later that morning, on May 26, after the daughters had attempted unsuccessfully to get into the house to gather their belongings, Magistrate Myers telephoned King and asked to arrange a time that she would be at home so that her daughters could come and pick up their belongings.[1] Six o'clock was agreed upon. King was at home and, although her daughters did not arrive, Officer James Hartman of the Warrenton police force did, and he told her that Magistrate Myers had ordered him to bring her to Myers' office. He had no warrant and would not indicate why she was to come with him. King was required to wait one hour before being taken in to see Magistrate Myers.
 
 
 6
 Magistrate Myers told King that she was being charged with assault of one of her daughters, assault and battery of the other daughter, and child neglect for locking one daughter out of the house. King claimed that she changed the locks because she feared that her own belongings would be removed to her husband's residence, as had occurred in the past, and that she feared for her own physical safety. She admitted striking her nineteen-year-old daughter the previous evening after the daughter struck her first. Upon the instruction of Magistrate Myers, Officer C.A. Sager prepared criminal complaints and arrest warrants for King, based on the sworn statements of Officer Sager.
 
 
 7
 A trial was scheduled in the Juvenile and Domestic Relations Court of Fauquier County for August 5, 1991. The nineteen-year-old daughter did not appear, although the minor daughter and Calvin King did so. Based upon "further investigation" of the case by Officer Sager, all of the charges were nolle prossed.
 
 
 8
 King thereafter filed an action against Officers Hartman and Sager, Magistrate Myers, the Town of Warrenton, Virginia and the County of Fauquier, Virginia, seeking damages under 42 U.S.C. § 1983, on the grounds that she was denied due process and equal protection of the laws by their conduct. An order of voluntary dismissal as to defendant County of Fauquier was entered without prejudice on October 15, 1991. After a hearing held before the Honorable Albert V. Bryan, Jr., the complaint against Magistrate Myers was dismissed on December 6, 1991, under Federal Rule of Civil Procedure 12(b)(6), on the ground that Magistrate Myers' actions "were not in 'clear absence of all jurisdiction' which she had as a magistrate[.]" The complaints against Officers Hartman and Sager and the Town of Warrenton were voluntarily dismissed, and the district court entered a final judgment as to Magistrate Myers on February 20, 1992.
 
 
 9
 King has now appealed the dismissal of her complaint against Magistrate Myers. She has contended that Magistrate Myers acted in the absence of all jurisdiction to order an arrest without a warrant, with the consequence that she is not immune from liability.
 
 II.
 
 10
 The Supreme Court has held that judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983, under certain conditions. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court stated that the common law has long recognized the "immunity of judges from liability for damages for acts committed within their judicial jurisdiction," even if such acts were allegedly done either maliciously or corruptly. Id. at 554, 87 S.Ct. at 1217-18 (citing Bradley v. Fisher, 80 U.S. 335, 13 Wall. 335, 20 L.Ed. 646 (1872)). See also Bellamy v. Gates, 214 Va. 314, 316, 200 S.E.2d 533, 535 (1973); Berry v. Smith, 148 Va. 424, 426, 139 S.E. 252, 253 (1927) (holding that, even though judicial officers may be subject to impeachment or indictment for allegedly malicious or corrupt actions, no civil liability would extend to the performance of judicial duties within their jurisdiction). The common law immunity of judges was not abolished by 42 U.S.C. § 1983, even though that statute permits suit against "every person" depriving another of their civil rights under color of law. Pierson, 386 U.S. at 554, 87 S.Ct. at 1217-18. Magistrates are judicial officers, and are thus entitled to absolute immunity under the same conditions as are judges. Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir.1987).
 
 
 11
 The first condition is that the judge's action cannot have been undertaken in the "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quoting Bradley, 13 Wall. at 351). A distinction is drawn between acts that are performed in "excess of jurisdiction" and those performed in the "clear absence of all jurisdiction over the subject-matter," with the former type of act accorded immunity. Id. 435 U.S. at 356 n. 6, 98 S.Ct. at 1104-05 (quoting Bradley, 13 Wall. at 351-52). No immunity is granted if "there is clearly no jurisdiction over the subject-matter ... [and] the want of jurisdiction is known to the judge...." Id. The question, then, is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him," and, in answering that question, "the scope of the judge's jurisdiction must be construed broadly...." Id., 435 U.S. at 356, 98 S.Ct. at 1104-05. The second condition is that the act must be a "judicial act." Id. at 360-62, 98 S.Ct. at 1106-08. That determination has two factors: whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity. Id. at 362, 98 S.Ct. at 1108. Thus, the absolute immunity extended to a judge performing a judicial action is not in any way diminished even if his or her "exercise of authority is flawed by the commission of grave procedural errors." Id. at 359, 98 S.Ct. at 1106. The errors do not render the act any less judicial, nor permit a determination that the court acted in the absence of all jurisdiction.
 
 
 12
 The questions before us, then, are whether Magistrate Myers acted in the "clear absence of all jurisdiction" and whether she acted in a nonjudicial capacity. Magistrates in Virginia are granted the power "[t]o issue process of arrest in accord with the provisions of §§ 19.2-71 to 19.2-82 of the Code." Va.Code Ann. § 19.2-45(1) (1990). The code sets forth the procedures by which a magistrate may issue process of arrest, including the examination of the complainant and/or witnesses, a finding of probable cause that an offense has been committed, and the issuance of a warrant for the arrest or a summons to appear in court. Id. §§ 19.2-72, 19.2-73. Law enforcement officers in Virginia are authorized to arrest, without a warrant, a person who is accused of committing assault and battery not in the presence of the officer, as long as the arrest is based on probable cause formed from a reasonable complaint of the person who observed the alleged offense. Id. § 19.2-81.
 
 
 13
 The distinction between acting in the "clear absence of all jurisdiction over the subject matter" and acting in "excess of jurisdiction," though perhaps sometimes difficult to detect, is highly relevant here. When a judge exceeds authority, was he or she entirely devoid of power or was a power lawfully possessed wrongly exercised?
 
 
 14
 While identification of the difference may, in some cases, present difficulties, it is firmly established in the law. Bradley v. Fisher, 13 Wall. at 351; Stump v. Sparkman, 435 U.S. at 356, 98 S.Ct. at 1104-05; Pressly v. Gregory, 831 F.2d at 517; Holloway v. Walker, 765 F.2d 517, 524 (5th Cir.), cert. denied, 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985); Billingsley v. Kyser, 691 F.2d 388, 389 (8th Cir.1982). Although a judge who "undertakes to act in an area where he has no subject matter jurisdiction [is denied absolute immunity], ... it is immaterial that his challenged judicial act may have been unauthorized by the laws which govern his conduct." Chu by Chu v. Griffith, 771 F.2d 79, 81 (4th Cir.1985). The boundaries of a magistrate's authority to issue process of arrest may well have been overstepped, perhaps even widely, in the instant circumstances. However, Magistrate Myers has jurisdiction to arrange, albeit with a warrant, for the arrest of those as to whom a complaint of criminal conduct has been made, and the law officer whom she directed to bring King in has the authority to make warrantless arrests under certain circumstances. In addition, the subject matter of alleged criminal conduct in the context of a domestic relations dispute is an area over which magistrates have jurisdiction. Moreover, we are obligated to construe the scope of her jurisdiction broadly. See Stump v. Sparkman, 435 U.S. at 356, 98 S.Ct. at 1104-05. Therefore, we cannot conclude that Magistrate Myers acted in the "clear absence of all jurisdiction over the subject matter." In determining whether the act was judicial, we look to the nature of the function performed. Forrester v. White, 484 U.S. 219, 227-29, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988). Her actions were judicial in that, while she may have exceeded her authority in the manner in which she ordered the arrest, she performed a function "normally performed by a judge." Stump v. Sparkman, 435 U.S. at 362, 98 S.Ct. at 1108. Therefore, the district court properly determined that Magistrate Myers was entitled to judicial immunity.
 
 
 15
 King has argued that Magistrate Myers usurped the powers of a law enforcement officer, and is thus precluded from hiding behind the cloak of judicial immunity. At oral argument, she cited Lopez v. Vanderwater, 620 F.2d 1229 (7th Cir.), cert. dismissed, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980), in which a judge was deemed to have acted as a prosecutor and was thus denied judicial immunity. To support that argument, she has noted that Virginia Code section 19.2-81 refers only to the authority of law enforcement officers to make warrantless arrests, and not to the authority of a magistrate to order such an arrest. By analogy, she argues that Magistrate Myers cannot be immune from liability for those nonjudicial acts which a law enforcement officer is authorized to undertake. In fact, Lopez supports our decision here. The Seventh Circuit held that a judge was not immune for certain "prosecutorial acts" such as deciding to prosecute, determining the offense to be charged, preparing a guilty plea and waiver and presenting the charge and plea form to himself, because these "were not functions 'normally performed by a judge,' " and thus were not "judicial acts." Lopez, 620 F.2d at 1235 (quoting Stump v. Sparkman, 435 U.S. at 360, 98 S.Ct. at 1106-07). However, the court also held that the judge was absolutely immune from liability for the actions that were taken in arraigning, convicting and sentencing a defendant in a police station housed in a branch of the court to which the judge was not assigned. Id. at 1234-35. The court acknowledged that the judge's acts may have exceeded his jurisdiction, and even characterized the acts as "outrageous." Id. at 1234. Nonetheless, because they were not undertaken in the clear absence of all jurisdiction, and were judicial acts, the judge was immune from liability for those acts. Id.
 
 
 16
 Similarly, even if Magistrate Myers exceeded the statutory grant of authority accorded to her, that does not make her acts any less "judicial." The relevant factor is whether the act is one "normally performed by a judge." Stump v. Sparkman, 435 U.S. at 360, 98 S.Ct. at 1106-07.[2] Issuing process of arrest for one accused of a crime is a judicial function. Our reliance upon the officer's authority to conduct warrantless arrests in certain circumstances to find an excess of jurisdiction rather than an absence of jurisdiction does not convert the magistrate's order to the officer into the act of an officer. See Mireles v. Waco, --- U.S. ----, ----, 112 S.Ct. 286, 298, 116 L.Ed.2d 9 (1991). The fact that the specific act of directing officers to effect warrantless arrests is not an act "normally performed" by a magistrate in Virginia does not make the act nonjudicial--such a result would deprive a judge of immunity for any act that is in error or in excess of authority. See id. --- U.S. at ---- - ----, 112 S.Ct. at 288-89. The magistrate did not conduct the warrantless arrest. Cf. Gregory v. Thompson, 500 F.2d 59, 64 (9th Cir.1974) (judge alleged to have assaulted plaintiff while physically removing him from the courtroom was entitled only to good faith immunity and not absolute immunity, in part because the act is one normally performed by a sheriff or bailiff and is thus nonjudicial.) Magistrate Myers cannot be deemed to have usurped the powers of a law enforcement officer.
 
 
 17
 King has also relied upon Yates v. Village of Hoffman Estates, Illinois, 209 F.Supp. 757, 759 (N.D.Ill.1962), arguing that the court therein construed a similar statutory framework and held that it is not a judicial function in Illinois for a magistrate to order a police officer to arrest a person who is not named in a warrant unless that person has committed a criminal offense in the magistrate's presence. We find no basis to conclude that the Illinois statutes governing magistrates in 1961 are sufficiently similar to Virginia's statutes in 1991, so as to render Yates relevant. In addition, the factual distinctions make the Yates holding inapposite to the instant circumstances. In Yates, the plaintiff alleged that the magistrate had issued a warrant charging only plaintiff's employer with the violation of a municipal ordinance, but had nonetheless directed the officer to arrest plaintiff, who was not named in the warrant nor charged with any offense. Thus, the plaintiff alleged that the magistrate knowingly ordered the plaintiff to be arrested without cause.
 
 
 18
 It is certainly questionable as to whether, according to King's allegations, Magistrate Myers acted properly within the bounds of the authority that she is granted under state law. Indeed, it would appear likely that Magistrate Myers may have exceeded the statutory grants of authority accorded to her by the allegedly questionable manner in which she effectuated the warrantless arrest of King. Nonetheless, however one may deprecate such an act, she did not perform a non-judicial act that was in the clear absence of all jurisdiction. In making that determination, we are mindful of the important purpose served by the doctrine of judicial immunity, which has been described as protecting the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217-18, 18 L.Ed.2d 288 (1967). The district court properly dismissed the claim against her.
 
 
 19
 Therefore, the decision of the district court is hereby
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The record does not indicate who contacted Magistrate Myers, nor what information was provided as to the altercation of the day before
 
 
 [2]
 As in Lopez, the second factor that was discussed in Stump, whether the parties dealt with the judge in her judicial capacity, is not relevant here. See Lopez, 620 F.2d at 1235