68 F.3d 460
 5 A.D. Cases 256, 7 NDLR P 180
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Betty LIVINGSTON, Plaintiff-Appellant,
v.
Zoro J. GUICE, Jr., The Honorable; State of North Carolina,
Defendants-Appellees.
UNITED STATES of America, Amicus Curiae.
 No. 94-1915.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 5, 1995.
Decided: October 18, 1995.
 
 ARGUED: Mary Ann Hubbard, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., Chapel Hill, NC, for Appellant. Miriam Rachel Eisenstein, United States Department of Justice, Washington, DC, for Amicus Curiae. Lars Franklin Nance, Special Deputy Attorney General, North Carolina Department of Justice, Raleigh, NC, for Appellees. ON BRIEF: Adam Stein, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., Chapel Hill, NC, for Appellant. Deval L. Patrick, Assistant Attorney General, Dennis J. Dimsey, United States Department of Justice, Washington, DC, for Amicus Curiae. Michael F. Easley, Attorney General of North Carolina, North Carolina Department of Justice, Raleigh, NC, for Appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and MOTZ, Circuit Judge.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 This appeal arises from the district court's grant of Rule 12(b)(6) motions to dismiss in an action brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. Sec. 12111 et seq. Betty Livingston seeks injunctive and declaratory relief against North Carolina Superior Court Judge Zoro Guice and monetary damages against the State of North Carolina, alleging that she was discriminated against on the basis of a physical disability. Because the district court erroneously granted absolute immunity to Judge Guice and dismissed Livingston's claim against the State, we reverse and remand for further proceedings.
 
 I.
 A.
 
 2
 In May 1992, Betty Livingston, who suffers from multiple sclerosis and is confined to a wheelchair, attended her nephew's murder trial in Caldwell County, North Carolina. Superior Court Judge Zoro Guice presided over the trial. During the first three days of trial, Livingston entered the second-floor courtroom through the only door she knew to be accessible from the elevator, the one that is located alongside the judge's bench. No signs indicated other options for handicap entrance into the courtroom, and at no point during the trial did Livingston learn that she could have entered the courtroom through one of two other doors. The first of these doors leads to the jury deliberation room and the second leads to a separate jury pool room, in which venirepersons wait during the jury selection process. Apparently, Judge Guice was also unaware that each of those two doors was wheelchair-accessible.
 
 
 3
 Over the course of the first three days of trial, Judge Guice grew increasingly annoyed by Livingston's unauthorized use of the restricted door, despite having been told that Livingston had a bladder problem requiring her to visit the restroom on a frequent basis. During a recess on the third day of trial, Livingston's nephew--the defendant on trial for murder--escorted her through the restricted doorway and to the ladies' room. Upon seeing the defendant walk through the doorway, Judge Guice ordered him to return to the courtroom. An assistant district attorney escorted Livingston back into the courtroom. Despite his annoyance with the situation, Judge Guice did not take any further action that day.
 
 
 4
 Ironically, it was Livingston's sister, and not Livingston herself, who strained Judge Guice's tolerance on the fourth day of trial. During presentation of the prosecution's case, Livingston's sister--who is not handicapped--fell ill and was rushed out of the courtroom by family. She left via the restricted door. At that point, Judge Guice interrupted the proceedings, looked directly at Livingston, and issued the following edict:
 
 
 5
 Nobody but nobody goes through this door and into this area except court personnel, and I mean court personnel. There will be no witnesses going through here, there will be no member of any family going through here, there will be nobody that's involved in this case going through this door and into this area behind this courtroom except lawyers and court personnel. Does everybody understand this?
 
 
 6
 Joint Appendix, at 13. When defense counsel tried to explain that the reason for the woman's hasty departure was that she had started vomiting in court, Judge Guice interrupted and stated: "There are facilities outside this courtroom and down on the first floor, as I understand it, and nobody goes into this area, I don't care who it is." Id. After so instructing those present in the court, Judge Guice called a recess and left the courtroom. Unable to leave by the only door known to be wheelchair-accessible, Livingston urinated on herself before being assisted out of court. For the remainder of trial, Livingston sat in the courthouse's downstairs lobby, awaiting information about the trial.
 
 B.
 
 7
 On November 13, 1992, Livingston brought this federal action under Title II of the Americans with Disabilities Act and 42 U.S.C. Sec. 1983.[1] Two months later, the defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). In June 1994, the district court finally ruled on the motions. In dismissing Livingston's claims as to both defendants, the district court never reached the merits of Livingston's claim under the ADA, ruling instead that Judge Guice was entitled to full judicial immunity and that the State could not be held liable in light of the judge's immunity. See Joint Appendix, at 29 (based on defendant Guice's being "clothed with judicial immunity," all claims raised by Livingston against him "will be dismissed for failure to state a claim upon which relief can be granted").
 
 
 8
 In deciding that Judge Guice was entitled to absolute immunity, the district court considered only whether Judge Guice had acted in excess of his jurisdiction as a judge when he restricted the use of certain entrances into the courtroom. According to the district court, so long as Judge Guice's handling of courtroom access could properly be labelled a "judicial act," he would be entitled to absolute immunity. The district court believed it to be "obvious that [Judge Guice's] actions were not taken in 'clear absence of all jurisdiction' and must be construed as judicial acts." Joint Appendix, at 29. In reaching this conclusion, the court relied most heavily on the Supreme Court's decision in Stump v. Sparkman, 435 U.S. 349 (1978), which made it clear that the only instance in which a judge might not be entitled to absolute immunity would be "where the acts are palpably in excess of the jurisdiction of the judges." Joint Appendix, at 27 (quoting Stump, 435 U.S. at 356). For purposes of judicial immunity, it would not matter whether "the action taken was in error, was done maliciously, or was in excess of his authority." Id. at 28 (citing Stump, 435 U.S. at 357).
 
 
 9
 The district court did not consider the effect that the type of relief sought by the plaintiff might have on Judge Guice's entitlement to absolute immunity. Livingston sought only injunctive and declaratory relief against the judge and reserved her request for monetary damages for her claim against the state. Despite drawing no distinction between claims for equitable relief, on the one hand, and claims for monetary damages, on the other, the district court relied on caselaw that had considered the immunity issue only in the context of a plaintiff's claim for monetary damages. See Joint Appendix, at 30 (quoting Austin Mun. Securities, Inc. v. Nat. Ass'n of Securities Dealers, Inc., 757 F.2d 676, 687 (5th Cir.1985) (recognizing that "[i]mplicit in the grant of absolute immunity is the recognition that the victim of an abuse of office may receive no recompense for the injury done") (emphasis added)). The clearest indication of the district court's failure to recognize that Livingston was seeking equitable, rather than compensatory, relief from Judge Guice is the final paragraph of the court's analysis:
 
 
 10
 Although the Plaintiff might not be compensated for the alleged injury she suffered at the hands of Judge Guice, this result is the "balance between evils" that the Supreme Court has chosen.
 
 
 11
 Id. at 30. Having arrived at its decision that Judge Guice was entitled to absolute immunity from suit, the district court made the inferential leap to the conclusion that the State could not be held liable and dismissed the claim brought against the State of North Carolina. This timely appeal followed.
 
 II.
 
 12
 Dismissal pursuant to Rule 12(b)(6) is a matter of law, reviewed de novo. Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 n. 16 (4th Cir.1992), cert. denied, 114 S.Ct. 93 (1993); Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989). As we noted in Martin, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." 980 F.2d at 952. Our review is, therefore, limited, and we need only determine whether the allegations constitute "a short and plain statement of the claim showing that the pleader is entitled to relief." Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir.), cert. denied, 439 U.S. 837 (1978). Because the defendants' motions to dismiss were granted based solely on the issue of judicial immunity, we conduct a de novo review of the district court's handling of that issue.[2]
 
 A.
 
 13
 "[G]enerally, a judge is immune from a suit for money damages." Mireles v. Waco, 502 U.S. 9, 9 (1991) (per curiam). It is a principle well-entrenched in the law. See Forrester v. White, 484 U.S. 219 (1988); Cleavinger v. Saxner, 474 U.S. 193 (1985); Dennis v. Sparks, 449 U.S. 24 (1980); Butz v. Economou, 438 U.S. 478 (1978); Stump v. Sparkman, 435 U.S. 349 (1978). Equally clear, however, is the principle that judges are not absolutely immune from suits for prospective injunctive relief. Pulliam v. Allen, 466 U.S. 522, 536-543 (1984). "Absolute" immunity, therefore, is only absolute insofar as it limits claims for damages brought against judges. See King v. Myers, 973 F.2d 354, 356 (4th Cir.1992) (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)) (noting that "the common law has long recognized the 'immunity of judges from liability for damages for acts committed within their judicial jurisdiction' "); cf. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (ruling that qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known") (emphasis added). The doctrine does not immunize judges from claims for equitable relief.
 
 
 14
 The Pulliam Court addressed the scope of judicial immunity from a civil suit that sought injunctive and declaratory relief under Sec. 1983 and attorney's fees under 42 U.S.C. Sec. 1988. Pulliam, a state magistrate judge in Virginia, imposed bail on persons arrested for nonjailable offenses and incarcerated those individuals if they could not meet bail. Allen brought a Sec. 1983 suit against Pulliam after spending 14 days in the county jail until he was able to post bond for a nonjailable offense. Allen sought to enjoin Pulliam's practice of incarcerating persons who were awaiting trials for nonincarcerable offenses. The Supreme Court granted certiorari to resolve the question of whether judicial immunity bars the award of attorney's fees pursuant to 42 U.S.C. Sec. 1988, Pulliam, 466 U.S. at 527, but began by "turn[ing] to the more fundamental question, that is, whether a judicial officer acting in her judicial capacity should be immune from prospective relief." Id. at 528. The Court refused to grant the officer immunity based on the absence of such immunity under common law. Id. at 536, 540. The Court also noted that even without immunity from prospective relief, judicial independence could be maintained. Id. at 536.
 
 
 15
 Pulliam 's limitation on the scope of absolute immunity is uncontroverted, yet the district court did not even cite this case. The court never considered the impact the type of relief sought has on the issue of judicial immunity, a significant mistake in light of Pulliam 's holding that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." Id. at 541-42.
 
 
 16
 Instead, the court relied exclusively on the Supreme Court's pre Pulliam decision in Stump v. Sparkman. The lower court failed to recognize that whether a judge is afforded absolute immunity for his judicial acts turns, in part, on the type of relief sought by the plaintiff. With Livingston only seeking injunctive and declaratory relief against Judge Guice, there is no basis for affording the judge absolute immunity.[3] The district court's grant of Judge Guice's 12(b)(6) motion must be reversed.
 
 B.
 
 17
 The district court's decision to wrap Judge Guice in the cloak of absolute judicial immunity directly affected the court's handling of Livingston's distinct claim against the State for monetary damages. Because we have ruled that Judge Guice is not entitled to absolute immunity, the district court's grant of the State's motion to dismiss must also be reversed.
 
 
 18
 In commenting that the plaintiff had "failed to allege even a single independent act or duty to act by the State of North Carolina," Joint Appendix, at 29, the district court disregarded Livingston's contention that the acts of Judge Guice are, in fact, acts of the State as well. As the Supreme Court noted in Pulliam, "a State acts only through its legislative, executive, or judicial authorities." 466 U.S. at 541. In barring Livingston from the courtroom, there is no question that Judge Guice was acting as the State's representative. As Livingston points out, the office of Superior Court Judge is created by the North Carolina Constitution, N.C. Const. art. IV, Sec. 9, judges' salaries are determined by the General Assembly, id. at Sec. 21, and the judges possess "statewide jurisdiction and duties." Holshouser v. Scott, 335 F.Supp. 928, 929, 932 (M.D.N.C.1971), aff'd, 409 U.S. 807 (1972). Lastly, Livingston sued Judge Guice strictly in his official capacity, which, "for all practical purposes, [is a suit] brought against the State." Hutto v. Finney, 437 U.S. 678, 699 (1978).
 
 
 19
 The court's only response to Livingston's claim that the State is responsible for the actions of its representative was to return to its absolute immunity analysis and cite Stump again for the proposition that "any acts performed by a judge in his 'judicial capacity' or during a 'judicial proceeding' are absolutely immune from civil liability." Id. at 30 (citing Stump, 435 U.S. at 361). Particularly confusing is the district court's reliance on the Fifth Circuit's decision in Austin Mun. Securities, Inc. v. Nat. Ass'n of Securities Dealers, Inc., 757 F.2d 676 (5th Cir.1985), in which the court evaluated a claim of absolute immunity brought by disciplinary officers of the National Association of Securities Dealers, Inc. Austin suggests nothing other than the fact that "absolute immunity exempts an official from personal liability," id. at 687 (emphasis added), a proposition recognized by both the Stump and Pulliam courts. Even more importantly, Austin includes no discussion of the scope of a state's immunity, as is suggested by the district court's reliance on Austin in that portion of its opinion evaluating North Carolina's immunity claim.
 
 
 20
 The district court dismissed Livingston's claim against the state based upon its erroneous conclusion that the judge was entitled to judicial immunity. See Joint Appendix, at 30-31 (finding that "[i]t utterly defies rationality to hold the State financially responsible for acts taken by one of its officials when that official is absolutely immune"). Having rejected the underlying premise of the district court's argument, we conclude that the State could not rely on its codefendant's supposed immunity in order to shield itself from suit.
 
 III.
 
 21
 The district court's evaluation of Judge Guice's claim to absolute immunity focused exclusively on the Supreme Court's 1978 decision in Stump, despite the fact that the Court's subsequent decision in Pulliam clarified that a judge is not absolutely immune from suits seeking prospective relief. Because we find that the district court's sole basis for granting defendants' Rule 12(b)(6) motions was its mistaken view of the scope of judicial immunity, we reverse the judgment of the lower court and remand for further consideration of Livingston's claims under the ADA.[4]
 
 REVERSED AND REMANDED
 
 
 [1]
 Livingston eventually dismissed her Sec. 1983 claim for damages against the State of North Carolina
 
 
 [2]
 We find unpersuasive the defendants' suggestion that the district court's ruling can be affirmed on the ground that insufficient facts were pled. In Conley v. Gibson, 355 U.S. 41 (1957), the Supreme Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46; accord Revene, 882 F.2d at 872. Unlike the legal issue of immunity, which we review de novo, attacks on the factual underpinnings of a complaint are considered in favor of the plaintiff. Conley, 355 U.S. at 45-46; Revene, 882 F.2d at 872. Because an appellate court must assume that the allegations of a complaint are true and construe them in the light most favorable to the plaintiff, Martin, 980 F.2d at 952 (citing Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)), we focus our attention on the legal issue of immunity and not on the factual disputes between the parties
 
 
 [3]
 Because Livingston did not file a complaint seeking damages against Judge Guice, we need not conduct an additional inquiry into whether the judge's restriction on courtroom access was an action taken in his judicial capacity, Forrester, 484 U.S. at 227-29; Stump, 435 U.S. at 360, and whether the action was taken in the complete absence of all jurisdiction. Id. at 356-57; King, 973 F.2d at 356
 
 
 [4]
 Notwithstanding the parties' efforts to the contrary, we decline to consider at this stage the distinct issue of whether the ADA's express abrogation of Eleventh Amendment immunity prevents the State of North Carolina from shielding itself from liability. See 42 U.S.C. Sec. 12202 ("A State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in federal or State court of competent jurisdiction for a violation of this Act."). Similarly, although the Supreme Court's holding in Franklin v. Gwinnett County Public Schools, 112 S.Ct. 1028, 1035 (1992), in conjunction with our subsequent decision in Pandazides v. Virginia Bd. of Educ., 13 F.3d 823, 831 (4th Cir.1994), provide us with the foundation for addressing whether the ADA includes a private right of action for damages, we are unwilling to do so without the district court first having had the opportunity to consider the matter. See Joint Appendix, at 31 n. 5 (district court noting in last line of opinion that, "[i]n light of this disposition, the court finds it unnecessary to address the possible grounds for dismissal based on eleventh amendment immunity, damages for private rights of action under ADA and agency review.")