**David Alan BEAR; Lynn H. Bear; Paula Rae Skeen; and James Lee Skeen, Plaintiffs,**

**v.**

**Robert D. POTTER; Carl Horn, III; J. Harvie Wilkinson, III; Donald L. Russell; K.K. Hall; Francis D. Murnaghan, Jr.; Sam J. Ervin, III; William W. Wilkins, Jr.; James M. Sullivan; Mark T. Calloway; M. Blane Michael;**

---

**8.** *See Manson v. Brathwaite,* 432 U.S. 98, 106, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (applying the five factors of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) to both pre-trial and in-court identifications).

H. Emory Widener, Jr.; Paul V. Neimeyer; Clyde H. Hamilton; J. Michael Luttig; Karen J. Williams; Diana Gribbobs Motz; John D. Butzner, Jr.; J. Dickson Phillips, Jr.; Robert F. Chapman; Several Unknown Staff Attorneys; and Unknown Officers of the Court, Defendants.

No. CIV. 3:99CV348.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Sept. 22, 1999.

David Alan Bear, Lynn H. Bear, Paula Rae Skeen, James Lee Skeen, pro se.

## MEMORANDUM AND ORDER OF DISMISSAL

THORNBURG, District Judge.

**THIS MATTER** is before the Court *sua sponte* to dismiss the Plaintiffs' complaint filed August 24, 1999. Due to the allegations of the complaint, the action is dismissed prior to answer by the Defendants.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 1997, federal agents executed a search and seizure warrant at the offices of Netware International (Netware) in Mooresville, North Carolina. *Bear v. Wydra*, 48 F.Supp.2d 516, 517 (W.D.N.C. 1999). Netware was created by David Bear in 1996 and operated as a member organization providing goods and services to its members who paid annual fees. Bill of Indictment, filed September 16, 1998, in *United States v. Bear*, Criminal Case No. 5:98cr221; Response to Government's Motion for Appointment of Special Master, filed August 27, 1999, in *United States v. Bear*, Criminal Case No. 5:99cr6. Bear employed his son-in-law, James Skeen, and his stepdaughter, Paula Skeen, in the business. Bill of Indictment, *supra*. In December 1996, Bear began offering banking services to its members through Netware International Bank (Bank). *Id.* In addition, it offered ownership in the Bank to its members by the sale of certificates which purported to give the owners the right to a percentage of the Bank profits. *Id.*

On February 9, 1999, David Bear and James Skeen entered into plea agreements with the government pursuant to which they pled guilty to a Bill of Information charging them with selling unregistered securities, share certificates in the Bank, in violation of 15 U.S.C. § 77(e). Plea Agreements, filed February 9, 1999 in Criminal Case Nos. 5:99cr6, 5:99cr7. In return for those agreements, the government agreed to dismiss the bill of indictment against both men as well as the charges against Paula Skeen. *Id.* The plea agreements also contain a provision that all items seized during the investigation of the case would be used to reimburse victims. In fact, there is presently pending before the undersigned a joint motion for the appointment of a master to effectuate such restitution. Government's Motion, filed August 17, 1999, and Response to Government's Motion for Appointment of Special Master, filed August 27, 1999, in Criminal Case No. 5:99cr6. The Defendants have not yet been sentenced.

One week after Bear and Skeen were indicted in Criminal Case No. 5:98cr221, they filed a *pro se* action against federal government officials claiming the obtaining and execution of the search warrant and seizure of property violated their constitutional rights. *Bear v. Wydra, supra.* On February 11, 1999, Senior U.S. District Court Judge Robert D. Potter dismissed the action. *Id.* This action arises from the same facts, but names as Defendants a district court judge and magistrate judge in the Western District of North Carolina and a majority of the judges of the Fourth Circuit Court of Appeals. The complaint is a verbatim copy of the complaint filed in *Lee, et. al. v. Mullen, et. al.*, Civil No. 3:99cv180, 1999 WL 907537, which was dismissed by the undersigned on September 2, 1999.

The causes of action are listed as deprivation of access to the courts, fraud on the court, violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, *et. seq.*, and slavery. For relief, Plaintiffs seek a report to Congress, a declaration that the judgment in *Bear v. Wydra* is void for fraud, a declaration that two of the Defendant judges are mentally incompetent and the convening of a grand jury to investigate the conspiracy.

### II. STANDARD OF REVIEW

The undersigned *sua sponte* considers whether the allegations of the complaint state causes of action upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *United Auto Workers v. Gaston Festivals, Inc.*, 43 F.3d

902, 905–06 (4th Cir.1995); *Grier v. United States*, 57 F.3d 1066 (table), 1995 WL 361271, at *1 (4th Cir.1995) ("A district court should not dismiss an action as frivolous under § 1915(d) if the plaintiff has paid the filing fee.... However, the court below properly found that there was no arguable basis which would entitle Appellant to relief. [Thus], the court would have been warranted in ... ordering dismissal *sua sponte*, [ ] under Rule 12(b)(6)."). In considering whether the allegations fail to state a claim, the Court must "construe [the] facts in the light most favorable to the plaintiffs." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997); Shepard's, *Motions in Federal Court*, § 5.124, at 367 (2d ed.1991). " 'Dismissal for failure to state a claim is proper where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' " *Randall v. United States*, 95 F.3d 339, 343 (4th Cir.1996). The complaint should "outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." Shepard's, at § 5.123, at 366. The Court takes judicial notice of prior proceedings in this District because the complaint clearly refers to those cases and they are related to this one. *Owens v. Smith*, 52 F.3d 321 (table), 1995 WL 236666, at *2 (4th Cir. 1995); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1238 (4th Cir.1989).

## III. DISCUSSION

### A. Judicial Defendants.

█ The factual allegations of the complaint are that Judge Potter dismissed their action in *Bear v. Wydra* without reading their pleadings and without requiring the Defendants to properly answer the complaint. On appeal, they allege the circuit judges also failed to read their pleadings. The circuit judges at issue are not identified. The judges are alleged to have conspired to dismiss their actions as frivolous and have established a pattern of failing to address issues raised by *pro se* litigants. As proof, they claim magistrate judges make recommendations to the district court judges who do not read the pleadings but allow staff attorneys to make the decisions for them. The same blanket allegation is made concerning unidentified Fourth Circuit judges. Moreover, the judges are alleged to have entered into a conspiracy with federal agents to assist in the seizure of property "using the criminal codes even when no crime has been committed for no other reason except to fund the federal agencies budget short falls." Complaint, at 7. The conspiracy is carried out when perjured seizure warrants are "rubber-stamped" by the judges. "The foregoing is factual evidence that a secret agenda has been created to seize property from law-abiding citizens with the help of the defendants." *Id.*, at 8.

These allegations do not "outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." Shepard's, § 5.123, at 366. Moreover, "[a]lthough Fed.R.Civ.P. 8(c) provides that '[a]ll pleadings shall be so construed as to do substantial justice,' th[e] [Circuit] has imposed a heightened pleading requirement for plaintiffs asserting actions against federal officials ...." *Randall*, 95 F.3d at 344. In support of the claim for denial of access to the courts, the complaint states merely, "[l]eaving *pro se* litigants to the inexperienced, unproven hands of defendant staff attorneys and defendant officers of the court (many fresh out of law school) rather than adjudication by Article III judges, is more that (sic) unconstitutional." Complaint, at 9. To support a claim for denial of access, however, Plaintiffs "cannot rely on conclusory allegations. Specificity is necessary so that [federal officials] are not required to file unnecessary responses to speculative allegations." *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir.1996). Here, the allegations are not specific, but general, and lead to nothing more than speculation

about what the essence of the complaint involves.

■ Plaintiff's allegations concerning fraud on the court are (1) that the use of staff attorneys and law clerks constitutes a fraud on the court and (2) the failure of the judges to address the issues raised is a predicate act for purposes of a violation of RICO. Fraud on the court is "typically confined to the most egregious cases, such as bribery of a judge or juror, or improper influence asserted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Express v. Int'l Bhd. of Teamsters, etc.*, 675 F.2d 1349, 1356 (4th Cir.1982).

In the late 1800's, American federal courts followed the English tradition of using law clerks "when Justice Horace Gray was appointed to the Supreme Court. Justice Oliver Wendell Holmes, who continued this practice when he succeeded Justice Gray, termed law clerks 'puisne judges.'"[1] *Fredonia Broadcasting Corp., Inc. v. RCA, Corp.*, 569 F.2d 251, 255 (5th Cir.1978), *overruled on other grounds, Riquelme Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345 (5th Cir.1987).

> It is true that there have always been judicial adjuncts-officials, permanent or ad hoc, who assist judges but are not themselves judges protected by the guarantees of independence that Article III took over from English practice .... For example, the eighteenth-century English court of equity-which like most modern American courts was terribly overloaded-had a bureaucratic organization that gave considerable discretion to subordinate officials .... [A]n [American] eighteenth-century judge did not have drafts of his opinions prepared by a young assistant; the first American law clerk was not appointed till 1875. [Nonetheless],[n]o American judge today believes that a law clerk becomes a judge by preparing an opinion draft.

*Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1046 (7th Cir.1984).

In 1948, Congress enacted 28 U.S.C. § 752 which authorizes district courts to employ law clerks. The undersigned is unable to fathom how the 100-year old tradition of law clerks constitutes a fraud on the court.

The Plaintiffs' next claim is that by allowing the seizure of property, the Defendants reduced them to slaves. This allegation is so spurious that it requires no comment.

■ The final claim is based on 18 U.S.C. § 1964, the civil RICO remedy pursuant to which the Plaintiffs allege the Defendants have engaged in "thousands of predicated acts of obstruction of justice" although no more specificity is provided. As best as can be gleaned from the complaint, Plaintiffs claim the Defendants conspired to use income (seized assets) derived from a pattern of racketeering activity (obstruction of justice) in the operation of an enterprise engaged in interstate commerce. However, there is no allegation that the partners in the criminal plan agreed to pursue the same criminal objective. *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). And, when claims for a purported conspiracy are alleged "in a merely conclusory manner, in the absence of concrete supporting facts," dismissal is appropriate. *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir.1995). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The complaint at issue contains nothing more than allegations of a "vague, conclusory or palpably incredible nature" and should be dismissed. *Raines v. United States*, 423 F.2d 526, 531 (4th Cir.1970). "There is a reason why we do not allow this level of conjecture to determine lawsuits: such adventures of the mind tend to be unreliable. [Plaintiffs'] conspiracy claim ... [is]

---

1. A term which means "subordinate."

Black's Law Dictionary (4th Rev. Ed.1968).

based upon a theory without proof." *Hinkle v. City of Clarksburg, W.Va.,* 81 F.3d 416, 423 (4th Cir.1996).

Moreover, the Supreme Court has long recognized the " 'immunity of judges from liability for damages for acts committed within their judicial jurisdiction,' even if such acts were allegedly done either maliciously or corruptly." [2] *King v. Myers,* 973 F.2d 354, 356 (4th Cir.1992) (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)) (footnote added).

**B. United States Attorney and Assistant U.S. Attorney Defendants.**

█ The only factual allegation which may be perceived to relate to the United States Attorney and his Assistants is the claim that they knowingly allow perjured evidence to be presented in order to obtain seizure warrants. Again, no prosecutor is specifically named. Thus, for the same reasons as expressed *infra,* the complaint fails to state a claim.

Moreover,

[t]he special functions of some governmental officials require that they be exempted completely from [ ] liability.... Such officials include judges performing judicial acts within their jurisdiction, ... prosecutors performing acts 'intimately associated with the judicial phase of the criminal process,' and 'quasi-judicial' agency officials whose duties are comparable to those of judges or prosecutors when adequate procedural safeguards exist.... A prosecutor performing the duties of initiating a prosecution ... is entitled to absolute immunity in an action for damages claiming that the prosecutor violated the plaintiff's constitutional rights.... Accordingly, a prosecutor's appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity.

*Ostrzenski v. Seigel,* 177 F.3d 245, 249–50 (4th Cir.1999) (citations omitted).

**C. Sanctions.**

█ "Undaunted by [their] lack of success on [their] prior claims," Plaintiffs filed this action in which they seek, among other ludicrous forms of relief, a declaration that each judicial defendant is mentally incompetent. *Vestal v. Clinton,* 106 F.3d 553, 554 (4th Cir.1997). Plaintiffs' claims in this action are "on [their] face [ ] at best fanciful or delusional, and more likely simply a deliberate affront to the judicial system...." *Brock v. Angelone,* 105 F.3d 952, 953 (4th Cir.1997). Indeed, there can be little doubt that this action was initiated to harass the Defendants and the judicial system in general. This observation is supported by the fact that the Plaintiffs copied the complaint in *Lee v. Mullen.*

By presenting to the court ... a pleading ... an ... unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances-

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims ... are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law ...;

(3) the allegations and other factual contentions have evidentiary support or, ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

Fed.R.Civ.P. 11(b). A violation of Rule 11 may result in the imposition of sanctions which may include directives of a nonmonetary nature, such as an injunction against future filings, and/or an order to pay a penalty into court. Fed.R.Civ.P.

---

**2.** Because a liberal reading of the complaint could be construed as seeking prospective relief other than damages, the initial portion of this ruling was necessary.

11(c)(1)(B). Plaintiffs are hereby placed on notice that any future filings in the Western District of North Carolina based on the facts alleged and asserted in this action and in *Bear v. Wydra* may result in the imposition of sanctions.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.