Waltina F. COLE Plaintiff,

v.

Magistrate Arthur SUMMEY and Town of Chapel Hill Defendants.

No. 1:04 CV 00189.

United States District Court, M.D. North Carolina.

Aug. 3, 2004.

Waltina F. Cole, Chapel Hill, NC, pro se.

Grady L. Balentine, Jr., North Carolina Department of Justice, Dan M. Hartzog, Cranfill Sumner & Hartzog, Raleigh, NC, for Defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

Plaintiff Waltina Cole brings this action for alleged violations of her due process rights in connection with her September 17, 2002 arrest. This case is currently before the Court on Defendant Summey's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6) [Doc # 5], and Defendant Chapel Hill's Motion to Dismiss pursuant to Rule 12(b)(6) [Doc. # 7]. For the reasons set forth below, both Defendants' motions will be GRANTED.

## I.

The facts, in the light most favorable to the Plaintiff, are as follows: On or about September 13, 2002, in Orange County, North Carolina, Magistrate Aurthur Summey issued a warrant for the arrest of Plaintiff Waltina F. Cole. The Magistrate issued the warrant on the basis of the sworn testimony of Raymond E. Smith, Jr. that Ms. Cole had violated a domestic violence protective order which had been issued earlier that same month.[1]

Ms. Cole reported to the Chapel Hill Police Department on September 17, 2002 where she was fingerprinted and photographed. Later that same day, Magistrate Summey charged Ms. Cole with violating the protective order and ordered her to be held in the Orange County Jail, despite Ms. Cole's protests that she had not been served with any protective order. He also informed Ms. Cole that he believed Mr. Smith's testimony, and that he hoped she would be held in custody "for forty-eight hours." (Compl. at 1.)

At approximately 2 p.m. on September 17, 2002, Ms. Cole appeared before Orange County District Court Judge Charles Anderson via teleconference. Judge Anderson asked Ms. Cole if she had been served any papers by the sheriff and Ms. Cole again denied having been served. Approximately twenty minutes later, Offi-

---

1. This order was apparently issued because Mr. Smith alleged that Ms. Cole had threat- ened to kill him.

cer Earl Thomas came to Ms. Cole's holding area and read the order to her. Shortly thereafter, Ms. Cole was taken before Judge Anderson and the charges against her were dismissed.

When Ms. Cole arrived at her apartment that same evening, a neighbor told her that Mr. Smith had been seen near Ms. Cole's apartment. Ms. Cole called the police, and the responding officer told her to file a claim for criminal trespass. Ms. Cole and her neighbor went to speak with Magistrate Summey about filing charges against Mr. Smith. When they met with Magistrate Summey, he told them, "Get out of my office, before I put you back in jail." (Compl. at 2.)

Ms. Cole filed suit in the District Court of Orange County against Magistrate Summey and the Town of Chapel Hill ("Chapel Hill") on January 30, 2004. Her *pro se* Complaint alleged that she was wrongfully arrested and that the Defendants "violated [her] Constitutional Rights of Due Process and [her] Civil Liberty." (Compl. at 3.)

Defendants removed the case to this Court on the basis of federal question jurisdiction. Each of the Defendants moved separately for dismissal of the claims against them, Chapel Hill moving for dismissal on March 10, 2004 and Magistrate Summey moving for dismissal on March 11, 2004. Although Ms. Cole was informed in writing of her right to respond to each of these motions within thirty days, she did not do so. In fact, to date Ms. Cole has not responded to either Motion to Dismiss.

## II.

Local Rule 7.3(k) provides that a party's failure to file a response within the time specified ordinarily constitutes a waiver of the right to file that response, and may result in the motion being considered uncontested. An uncontested motion may be granted without further notice to the party who failed to file a timely response. Nonetheless, given the Court's heightened duty to *pro se* plaintiffs, the merits of Defendants' Motions to Dismiss will be addressed in turn.

## III.

■ Magistrate Summey has moved to dismiss Ms. Cole's case on the basis of Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). He first claims that Ms. Cole's case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) because of improper service.[2] However, the Motion to Dismiss also states that Magistrate Summey "recognizes that the interests of justice may best be served by addressing dispositive motions on the merits" and "urges dismissal of this plaintiff's claims on substantive immunity grounds," not on the basis of improper service. Therefore, any defense on the basis of improper service is deemed waived and the merits of the case will be considered.

Magistrate Summey has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Ms. Cole cannot prove any set of facts in support of her claims that entitles her to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). In general, a complaint should not be dismissed under Rule 12(b)(6) as long as "it sets out facts sufficient for the

---

**2.** Magistrate Summey contends that Ms. Cole improperly attempted personal service instead of serving the Magistrate's agent or the Attorney General.

court to infer that all the required elements of the cause of action are present." *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972).

Magistrate Summey argues in his 12(b)(6) motion that judicial immunity provides him with absolute immunity from a suit for money damages. Judges have long held absolute immunity for acts committed within their judicial discretion, even where those acts were allegedly done maliciously or corruptly. *Stump v. Sparkman,* 435 U.S. 349, 355–56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (citations omitted); *King v. Myers,* 973 F.2d 354, 356 (4th Cir.1992). This immunity is present even in suits brought under 42 U.S.C. § 1983, despite the fact that the statute makes liable "[e]very person" who deprives another of his civil rights. *King,* 973 F.2d at 356.

Two requirements must be met before judicial immunity will apply. First, the act complained of must have been a "judicial act," meaning both that the judge performed a function normally performed by a judge and that the other party dealt with the judge in his official capacity. *Id.* at 357. Second, the judge must have had subject matter jurisdiction at the time the challenged act occurred. This second factor is construed broadly—the relevant question is whether the judge "acted in the clear absence of all jurisdiction." *Id.* at 356–57.

To determine whether Magistrate Summey met the first requirement of performing a judicial act, it is necessary to determine both whether he performed a function normally performed by a judge, and whether Ms. Cole dealt with him in his official capacity. North Carolina courts have found that a magistrate does perform a judicial act when he issues a warrant. *See, e.g., State v. Matthews,* 270 N.C. 35, 39, 153 S.E.2d 791, 795 (1967); *Foust v.*

*Hughes,* 21 N.C.App. 268, 270, 204 S.E.2d 230, 231 (1974). Further, the Fourth Circuit has found that a state magistrate is entitled to judicial immunity for his acts in issuing, or failing to issue, criminal arrest warrants. *Timmerman v. Brown,* 528 F.2d 811, 813–14 (1975) (granting immunity to a South Carolina magistrate as to any claims for money damages in connection with the issuance and non-issuance of warrants). Here, Ms. Cole only complains of dealings with Magistrate Summey in his official capacity. The Complaint only references acts taken and statements made by the Magistrate in connection with issuing, or failing to issue, arrest warrants. Accordingly, both prongs of the first factor are met and this Court finds that Magistrate Summey was performing a judicial act.

The second factor in analyzing judicial immunity is whether Magistrate Summey acted in the clear absence of jurisdiction. Under North Carolina law, magistrates are officers of the district court. N.C. Gen.Stat. § 7A–170. The district court has original subject matter jurisdiction over domestic violence actions. N.C. Gen. Stat. § 50B–2(a). Further, magistrates have the power to issue arrest warrants in any criminal action or infraction. N.C. Gen.Stat. § 7A–273. Violation of a domestic violence protective order is a Class A1 misdemeanor. N.C. Gen.Stat. § 50B–4.1(a). Accordingly, Magistrate Summey was not acting in the clear absence of jurisdiction by issuing an arrest warrant for Ms. Cole, or in failing to issue a warrant for Mr. Smith. Whether or not the comments allegedly made in connection with these acts were appropriate, they were made in connection with judicial acts within Magistrate Summey's jurisdiction and he is thus entitled to immunity for them.

Because the facts of the Complaint indicated that Magistrate Summey was performing a judicial act and addressing matters within his jurisdiction, he is entitled to judicial immunity for his actions in this case. As such, Ms. Cole has not stated a claim for relief against him, and Magistrate Summey's Motion to Dismiss will be GRANTED.

### IV.

Chapel Hill has also moved to dismiss Ms. Cole's Complaint for failure to state a claim against it. Specifically, Chapel Hill argues both that the Complaint fails to allege a basis for municipal liability under 42 U.S.C. § 1983, and that the Complaint lacks any actionable due process claim. This Court finds that the Complaint fails to allege a basis for municipal liability, and therefore the merits of the due process claim need not be addressed.

There are two elements to a claim brought under 42 U.S.C. § 1983:(1) The defendant deprived the plaintiff of a right or privilege secured by the Constitution or federal laws; and (2) the deprivation was done under color of state law. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Claims pursuant to § 1983 may be brought against both governmental entities and individual government actors. However, a complaint fails to state a § 1983 claim against a municipal entity unless it alleges violations occurring as a result of an official policy,[3] as ordered by someone with the authority to speak for that entity. *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir.1999). Accordingly, a municipality may not be sued under § 1983, on a respondeat superior theory, for any constitutional violations committed by employees acting within the scope of their employment. *See, e.g., Weller v. Dept. of Social Servs.,* 901 F.2d 387, 398 (4th Cir.1990).

The only acts alleged in the Complaint are that Magistrate Summey issued a warrant for Ms. Cole's arrest and charged her with a misdemeanor even though the Sheriff's Office had not yet served her with notice of the protective order against her, that Ms. Cole was held in custody for some portion of a day until her case was dismissed, and that Magistrate Summey later refused to issue a warrant for Mr. Smith's arrest and demanded that Ms. Cole leave his office. There is no allegation of any official policy by Chapel Hill or of any act taken by a town official with authority to make municipal policy decisions. Instead, the primary allegations address the actions of a state magistrate and the failure of sheriff's officers to properly serve Ms. Cole in this particular instance. Therefore the Complaint has failed to state a claim against Chapel Hill for constitutional violations and Chapel Hill's Motion to Dismiss will be GRANTED.

### V.

For the reasons set forth above, both Defendants' motions to dismiss will be GRANTED for failure to state a claim on which relief can be granted. Because there are no claims remaining, the case will be DISMISSED in its entirety.

---

3. An official policy may include: an express oral or written policy; decisions of a person with final policymaking authority; an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Carter v. Morris,* 164 F.3d 215, 217 (4th Cir.1999).